UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

VICTOR COFFIN, an individual, and )
VICTOR COFFIN, as Personal )
Representative of the Estate of )
LINDA COFFIN, deceased, )
　)
　　　　　Plaintiff, )
　)
v. ) Docket No. 2:18-cv-472-NT
　)
AMETEK, INC., et al., )
　)
　　　　　Defendants. )

**ORDER ON DEFENDANTS' MOTIONS TO EXCLUDE**

Plaintiff Victor Coffin alleges that he was exposed to asbestos and that as a result he developed malignant mesothelioma. Both Defendant Maine Central Railroad ("**MCRR**") and Defendant Honeywell International Inc. ("**Honeywell**") have moved to exclude the expert testimony of Jerrold L. Abraham, M.D., and the expert testimony of David Ozonoff, M.D. (ECF Nos. 86–89). For the reasons set forth below, I **DENY** these motions.

**BACKGROUND**

Plaintiff Victor Coffin served as an aviation electrician in the U.S. Navy from January 1968 to September 1971, as a machinist for MCRR from 1971 to 1987, and as an employee of the State of Maine from 1987 to 1988. Compl. ¶ 1 (ECF No. 1). He was diagnosed with malignant mesothelioma on January 18, 2017. Compl. ¶ 1. He

alleges that he was exposed to asbestos and that the exposure caused his illness. Compl. ¶¶ 13, 15, 39.

In November of 2018, Mr. Coffin filed a Complaint asserting six counts against several defendants. The Plaintiff has since voluntarily dismissed all defendants except MCRR and Honeywell. The Plaintiff brings claims for negligence, failure to warn, and breach of warranty against Honeywell[1] and asserts that MCRR violated the Federal Employer's Liability Act ("**FELA**") and the Federal Safety Appliance Act by failing to provide him with a reasonably safe work environment. Compl. ¶¶ 11–39.

## LEGAL STANDARD

District courts act "as gatekeepers of expert testimony." *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 91 (1st Cir. 2014). "A district court must 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' " *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 85 (1st Cir. 2017) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). The testimony is considered reliable if it is "based on sufficient facts or data," it "is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). The proponent of the testimony does not "carry the burden of proving to the judge that the expert's assessment of the situation is correct." *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (internal quotation marks omitted).

---

[1] Mr. Coffin brings all claims on behalf of himself and as the personal representative of his wife's estate. He alleges that he "was unable to provide help and assistance to his spouse during her illness between his diagnosis and December 14, 2017, when she passed away." Compl. ¶ 29 (ECF No. 1).

2

Rather, the proponent must only "show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id.* (internal quotation marks omitted).

Expert testimony must also be relevant "not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Bricklayers*, 752 F.3d at 91 (internal quotation marks omitted); *see also* Fed. R. Evid. 702(a). A court must examine the expert's conclusions "to determine whether they flow rationally from the methodology employed," and must exclude testimony where " 'there is simply too great an analytical gap between the data and the opinion proffered.' " *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 32 (1st Cir. 2012) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Brown v. Wal–Mart Stores, Inc.*, 402 F. Supp. 2d 303, 308 (D. Me. 2005) (internal quotation marks omitted). Testimony should be excluded on foundational grounds only when an "expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Id.* at 309 (internal quotation marks omitted).

"A party seeking to introduce expert testimony at trial must disclose to the opposing party a written report that includes 'a complete statement of all opinions the witness will express and the basis and reasons for them.' " *Gay v. Stonebridge*

3

*Life Ins. Co.*, 660 F.3d 58, 62 (1st Cir. 2011) (quoting Fed. R. Civ. P. 26(a)(2)(B)). Among other things, the report must contain "the facts or data considered by the witness in forming" his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). Incomplete or late disclosures may warrant "preclusion of the relevant expert information at a hearing, or at trial, *unless* the failure was substantially justified or is harmless." *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 91 (1st Cir. 2020) (internal quotation marks and alterations omitted). But "[p]reclusion is not strictly required," and district courts must determine the appropriate sanction on " 'a case-by-case basis.' " *Id.* (quoting *Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003)).

Under Maine law, a claim for negligence requires a plaintiff to establish that he suffered an injury that was proximately caused by a breach of a duty owed to the plaintiff by the defendant. *Grant v. Foster Wheeler, LLC*, 140 A.3d 1242, 1245 (Me. 2016). "To establish a prima facie case in personal injury asbestos litigation, a plaintiff must demonstrate both product nexus, meaning that the plaintiff was exposed to the defendant's asbestos-containing product, and medical causation, meaning that such exposure was a substantial factor in causing the plaintiff's injury." *Id.* at 1246. Moreover, the injury must have been "either a direct result or a reasonably foreseeable consequence of the negligence." *Id.* (internal quotation marks omitted).

Under FELA, a railroad is liable for the injury or death of any employee "resulting in whole or in part from the negligence of any of the [railroad's] officers, agents, or employees . . . or by reason of any defect or insufficiency, due to its

4

negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51. The Supreme Court has "liberally construed FELA to further Congress' remedial goal," particularly in the context of determining causation. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994); *see also CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011) ("FELA's language on causation . . . is as broad as could be framed." (internal quotation marks omitted)). Thus, a defendant can be liable under FELA if its negligence "is shown to have *played any part, even the slightest, in producing the injury*, . . . even if the extent of the injury or the manner in which it occurred was not probable or foreseeable." *McBride*, 564 U.S. at 703–04 (internal quotation marks omitted).

## DISCUSSION

### I. Expert Testimony of Dr. Abraham

Both Honeywell and MCRR move to exclude the testimony of Dr. Jerrold Abraham. In his report, Dr. Abraham states, "Based on all the available information I can conclude to a reasonable degree of medical certainty that Mr. Coffin's asbestos exposure (cumulative) was the cause of his malignant mesothelioma and will very likely be the case of his death." Abraham Report 1 (ECF No. 93-1).

#### A. Honeywell's Motion

Honeywell argues that Dr. Abraham should be precluded from offering a causation opinion related to its product, Bendix brakes, because "(1) Plaintiff failed to disclose any such opinion, and (2) even assuming the proper disclosure of a causation opinion, Dr. Abraham's methodology is not based on any coherent,

5

reproducible or testable scientific methodology or principle for determining causation." Honeywell's Mot. Exclude Dr. Abraham's Causation Op. and Req. for Evidentiary Hr'g 1 ("**Honeywell's Mot. Exclude Abraham**") (ECF No. 89).[2]

### 1.     Disclosure of Dr. Abraham's Testimony

First, Honeywell asserts that, because the "Plaintiff failed to disclose any case specific causation opinion related to Bendix brake dust, . . . any such opinion should be excluded." Honeywell's Mot. Exclude Abraham 6. Honeywell emphasizes that Dr. Abraham "acknowledged that he does not have any information about any of the manufacturers of any of the automotive friction products that Mr. Coffin worked with." Honeywell's Mot. Exclude Abraham 7. In response, the Plaintiff argues that "Dr. Abraham's opinion implicitly includes all exposures to asbestos relevant to the resolution of Plaintiff's claims," adding that he "will answer specific causation hypotheticals at trial based on what the Court finds admissible." Pl.'s Opp'n Honeywell's Mot. Exclude Abraham 14 (ECF No. 93).

Experts are not typically fact witnesses. *See Fed. Energy Regulatory Comm'n v. Silkman*, No. 1:16-cv-00205-JAW, 2019 WL 6467811, at *4–5 (D. Me. Dec. 2, 2019). An "expert usually accepts a set of facts and then expresses an opinion on them." *Id.* It then becomes for the jury to decide whether the party offering that expert testimony has proven the underlying facts. *Id.* Often, counsel will pose hypothetical questions to experts based on facts developed at trial. *See Toucet v. Mar. Overseas*

---

[2]     Honeywell subsequently waived its request for an evidentiary hearing. (ECF No. 107.)

*Corp.*, 991 F.2d 5, 10 (1st Cir. 1993); 29 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 6274 (2d ed.).

In this case, the Plaintiff's disclosure of Dr. Abraham's expert testimony included his report. *See* Expert Designation (ECF No. 89-1). In that report, Dr. Abraham noted that, according to the information provided, Mr. Coffin completed approximately 100 automobile brake repairs and replacements.[3] Abraham Report. Although Honeywell contends that "Dr. Abraham had no information about Mr. Coffin's potential exposure to Bendix brake dust, or even if there was any such exposure," Honeywell's Reply to Pl.'s Response to Mot. to Exclude Dr. Abraham's Causation Opinion 2 (ECF No. 97), Dr. Abraham's lack of personal knowledge about Mr. Coffin's specific exposure is beside the point. Dr. Abraham was given a factual background, the foundation of which must be proved at trial. Moreover, there is no indication that Dr. Abraham intends to offer specific causation testimony detached from that factual background or from a hypothetical question posed to him at trial. At this stage, I decline to narrow or limit Dr. Abraham's testimony based on speculative concerns about what he might say, and I deny Honeywell's motion on these grounds.

---

[3] Honeywell cites *Samaan v. St. Joseph Hospital* as an example of a court excluding expert testimony that was not properly disclosed. Honeywell's Reply to Pl.'s Response to Mot. to Exclude Dr. Abraham's Causation Opinion 2 (ECF No. 97). But in that case the plaintiff attempted to introduce causation testimony from two treating physicians, whom he had not designated as causation experts and whose reports and notes contained no causation opinions. *Samaan v. St. Joseph Hosp.*, 274 F.R.D. 41, 46–48 (D. Me. 2011). In affirming the district court's exclusion of the testimony, the First Circuit stated that "it [was] nose-on-the-face plain that these two physicians were intended to be fact witnesses," adding that the plaintiff knew how to designate a causation expert because he did so with another witness. *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 36 (1st Cir. 2012). Here, it was clear from the Plaintiff's designation that Dr. Abraham is to serve as a causation expert, and there is no indication that he is to serve as a fact witness.

### 2.     Methodology of Causation Testimony

Honeywell next argues that Dr. Abraham's causation testimony should be excluded because it is not reliable. Honeywell's Mot. Exclude Abraham 12. Honeywell advances several arguments attacking the methodology used by Dr. Abraham.

First, Honeywell criticizes Dr. Abraham for failing to distinguish between different types of asbestos fibers. Honeywell asserts that there are "significant differences between brake dust and raw chrysotile asbestos," explaining that the treatment of brake pads has been shown to "inactivate" chrysotile fibers and reduce their potential to cause cancer. Honeywell's Mot. Exclude Abraham 10. Honeywell then references two studies on brake dust exposure and notes that Dr. Abraham stated that he had not yet studied them. Honeywell's Mot. Exclude Abraham 11.

But this argument does not explain how Dr. Abraham's testimony—that Mr. Coffin's cumulative exposure to asbestos caused his mesothelioma—is unreliable and inadmissible. In other words, the fact that certain exposures to asbestos might have had a lower potential to cause cancer does not undermine the conclusion that Mr. Coffin's exposures cumulatively caused his illness. Moreover, Honeywell's argument ignores that, at his deposition, Dr. Abraham recognized distinctions between types of asbestos fiber but explained that it is challenging to compare potential exposures, noting that "most people like Mr. Coffin have had multiple different exposures, so that's why there's a dearth of information about pure one industry exposures or one product exposures." Abraham Dep. 49:18–50:02 (ECF No. 89-3). Admitting Dr. Abraham's testimony does not preclude Honeywell from introducing testimony to counter it or to show that any exposure to Honeywell's brakes in particular did not

8

cause Mr. Coffin's illness.[4] *See Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) ("As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies . . . ." (internal citation omitted) (quoting *Daubert*, 509 U.S. at 590)).

Next, Honeywell argues that Dr. Abraham does not rely on any estimate of Mr. Coffin's lifetime dose or dose from automotive brakes. In particular, Honeywell critiques Dr. Abraham for his inability to determine whether Mr. Coffin's exposure to brake dust was even "one percent of [Mr. Coffin's] total lifetime exposures" and for his concession that he cannot "attribute any of Mr. Coffin's exposure to a particular manufacturer." Honeywell's Mot. Exclude Abraham 14.

Honeywell appears to argue that it cannot be found liable based on Dr. Abraham's testimony alone. But neither Mr. Coffin nor Dr. Abraham appear to assert any such thing. Courts have noted that it is " 'irrefutable, scientific fact' " that every

---

[4] Relatedly, Honeywell contends that Dr. Abraham "cannot point to any peer-reviewed epidemiologic publication that reliably concludes that brake dust is an established cause of mesothelioma." Honeywell's Mot. Exclude Dr. Abraham's Causation Op. and Req. for Evidentiary Hr'g 18 ("**Honeywell's Mot. Exclude Abraham**") (ECF No. 89). Although epidemiological studies are helpful in proving general causation, they are not required. *See In re Berg Litig.*, 239 F.3d 1127, 1130 (9th Cir. 2002). And Dr. Abraham did explain that he is unaware of any studies that have "sufficient power to rule out an increased risk" of mesothelioma from brake work. Abraham Dep. 43:15–44:05 (ECF No. 89-3). Moreover, when useful data collection is difficult—such as when it is challenging to conduct studies with sufficient controls in place—courts should not exclude testimony due to this lack of epidemiological data. *See Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 24–25 (1st Cir. 2011). Here, Dr. Abraham identified such a challenge, citing the lack of data about one industry exposures. Abraham Dep. 49:18–50:02.

asbestos exposure adds to the cumulative dose and that a threshold level for developing mesothelioma is unknown. *See Jack v. Borg-Warner Morse TEC LLC*, No. C17-0537JLR, 2018 WL 3819027, at *16 (W.D. Wash. Aug. 10, 2018) (quoting *Rost v. Ford Motor Co.*, 151 A.3d 1032, 1045 (Pa. 2016)). Nevertheless, as the court in *Jack* explained, "[t]hese 'irrefutable scientific fact[s]' do not answer the legal question of whether particular exposures to asbestos are substantial factors." *Id.* "Put another way, even an exposure that increases the risk of mesothelioma may fail to constitute a substantial factor." *Id.*; *see also Rost*, 151 A.3d at 1045–46 (noting the difference between an expert "informing juries about certain fundamental scientific facts necessary to a clear understanding of the causation process for mesothelioma" and "establish[ing] legal (substantial factor) causation"). The frequency, regularity, and proximity of Mr. Coffin's exposure to asbestos from each source raises a separate question from whether Mr. Coffin's cumulative exposure to asbestos caused his mesothelioma.[5] The latter question is the one that Dr. Abraham's opinion appears to answer.

---

[5] As noted above, the causation requirement under Maine law demands both an exposure to the defendant's product and a determination that the exposure was a substantial factor in causing the plaintiff's injury. The Law Court has not yet decided what amount of exposure a plaintiff must show, but it has identified two tests applied in other jurisdictions. *Grant v. Foster Wheeler, LLC.*, 140 A.3d 1242, 1246 (Me. 2016). The more "burdensome" of the two requires that " '[t]o support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.' " *Id.* (quoting *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162–63 (4th Cir. 1986)). This has been referred to as the "frequency, regularity, and proximity test." *See id.* (internal quotation marks omitted). The notion that there can be a "reasonable inference of substantial causation" based merely on the level of exposure to asbestos suggests that Dr. Abraham's opinion is perhaps serving a more limited purpose than Honeywell conveys.

Honeywell's critique that Dr. Abraham disregarded any quantification of exposure from Bendix brakes also falls short. *See* Honeywell's Mot. Exclude Abraham 18. At his deposition, Dr. Abraham repeated what he was told about Mr. Coffin's exposure, including that Mr. Coffin had completed approximately 100 brake jobs. Abraham Report. Dr. Abraham also acknowledged that—when the number of alleged brake jobs is minimal, such as ten or fewer—he would need to view a lung fiber burden analysis because he had "never seen a case" where it was alleged that ten brake jobs caused mesothelioma. Abraham Dep. 82:17–83:17. This suggests that Dr. Abraham has conducted an assessment of the frequency of Mr. Coffin's exposure to brake dust—based on the facts he was presented—and has compared it to examples of other individuals with mesothelioma.[6]

Finally, Honeywell takes aim specifically at Dr. Abraham's "cumulative exposure" theory. Honeywell argues that Dr. Abraham fails to articulate any scientific support for "his conclusion that any exposure to asbestos that contributes to the 'cumulative exposure' must be deemed a substantial contributing cause to the development of mesothelioma." Honeywell's Mot. Exclude Abraham 13.

It is true that courts have rejected the "each and every exposure" theory of liability. *See Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 846 (E.D.N.C. 2015) (collecting cases). But the Plaintiff emphasizes that Dr. Abraham is not relying on

---

[6] This point also distinguishes this case from other cases where courts have criticized experts for failing to quantify or attempt to quantify exposure. *See, e.g.*, *Krik v. Crane Co.*, 76 F. Supp. 3d 747, 754 (N.D. Ill. 2014) (noting that plaintiff's experts had "not presented any individualized analysis of his level of asbestos exposure").

such a theory.[7] *See* Pl.'s Opp'n Honeywell's Mot. Exclude Abraham 9–10. Instead, the Plaintiff states that Dr. Abraham relies on the "cumulative" exposure theory.[8] Pl.'s Opp'n Honeywell's Mot. Abraham 9–10.

As with its other arguments, Honeywell appears to be asserting that Dr. Abraham's testimony cannot establish Honeywell's liability.[9] In support of that position, Honeywell identifies several factors that it contends are the "minimal considerations for a reliable conclusion that a particular exposure caused a person's disease," adding that courts have probed those considerations "when determining the sufficiency of expert opinion testimony."[10] Honeywell's Mot. Exclude Abraham 14.

---

[7]     Some courts have also rejected a distinction between the "each and every" exposure and "cumulative" exposure theories. *See Rockman v. Union Carbide Corp.*, 266 F. Supp. 3d 839, 849 (D. Md. 2017); *Suoja v. Owens-Illinois, Inc.*, 211 F. Supp. 3d 1196, 1207–08 (W.D. Wis. 2016). But in those cases, the experts explicitly stated that the precise amount of exposure was not relevant and that every exposure should be considered a cause, "regardless of the type of mesothelioma, the exposure 'dose,' the type of asbestos, or the passage of time." *Rockman*, 266 F. Supp. 3d at 848–49. Dr. Abraham does not go so far in his conclusions here.

[8]     In his deposition, Dr. Abraham does state that, whether the identified exposures "represent all [Mr. Coffin's] exposures or only part of his exposures doesn't matter to [him] at this point," adding that they "were substantial contributing factors." Abraham Dep. 80:11–20. But, when presented with hypotheticals, he also differentiates between varying levels and frequency of exposures, indicating that he has not adopted the position that every possible exposure can be a substantial factor. *See* Abraham Dep. 82–87. And he suggests that he would answer additional hypotheticals about lower levels. *See* Abraham Dep. 81:12–82:01. Although there might be a need to limit Dr. Abraham's testimony at trial, I conclude that exclusion of his testimony altogether is unwarranted. *See Jack v. Borg-Warner Morse TEC LLC*, No. C17-0537JLR, 2018 WL 3819027, at *16 n.22 (W.D. Wash. Aug. 10, 2018) (explaining that there is "a fine line between any increase of risk and one that . . . qualif[ies] as a substantial factor," and noting that the Defendants could "renew their objections should [the expert] cross that line at trial").

[9]     Both Honeywell and MCRR cite *Scapa Dryer Fabrics, Inc. v. Knight*, 788 S.E.2d 421 (Ga. 2016), a case in which the Georgia Supreme Court held that Dr. Abraham's cumulative exposure theory was inadmissible. *See* Honeywell's Mot. Exclude Abraham 4, 20; MCRR's Mot. Exclude Abraham 4 (ECF No. 86). But because that court held that Dr. Abraham's theory was not relevant and would not assist the jury, it never reached the question of whether his opinion was "scientifically valid." *Scapa*, 788 S.E.2d at 290 & n.6. In contrast, the reliability of Dr. Abraham's theory appears to be at the heart of both motions before me. The Defendants do not assert that Dr. Abraham's opinion is not relevant.

[10]    According to Honeywell, those factors include "whether exposure occurred, what the specific chemical agents were, what levels of exposure to the agent at issue have been demonstrated to be

But most of the cases cited, all of which applied other states' substantive laws, addressed what was required to establish causation and prevail, not the admissibility of causation testimony.[11] For example, Honeywell cites *In re New York City Asbestos Litigation (Juni)*, 11 N.Y.S.3d 416 (N.Y. Sup. Ct. 2015), in which a trial court detailed the causation requirements for brake dust exposure.[12] Honeywell's Mot. Exclude Abraham 15–16. But that court was weighing the sufficiency of the causation testimony, noting that the expert conceded that he could not identify a study to support his proposition that exposure to automobile brakes increased the risk of contracting mesothelioma. *In re N.Y.C. Asbestos Litig.*, 11 N.Y.S.3d at 433–34. Thus, the court concluded that the plaintiffs "failed to prove specific causation." *Id.* at 435. This conflates two separate issues: whether an expert's testimony is reliable enough to be admissible and whether an expert's testimony, applied to the facts of the case, is sufficient to prove an essential element of the plaintiff's claim.[13]

---

sufficient for causation, and importantly, information or knowledge that the individual was exposed to such levels." Honeywell's Mot. Exclude Abraham 14.

[11]   Honeywell does cite one case involving a motion to exclude. *See* Honeywell's Mot. Exclude Abraham 14 n.8 (citing *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1224 (D. Colo. 1998)). In that case, the plaintiffs sued manufacturers of silicone breast implants, claiming that the implants caused autoimmune diseases. *In re Breast Implant Litig.*, 11 F. Supp. 2d at 1223–24. The court excluded the testimony of the plaintiffs' causation experts because the experts presented only a suggestive causal relationship—forged from their own clinical experience rather than from scientific studies—and thus could not testify reliably about general causation. *See id.* at 1228–37. Honeywell develops no argument as to how that case resembles what is before me here.

[12]   Honeywell also cites to *Haskins v. 3M Company*, but in that case the court excluded the expert's testimony on Rule 403 grounds, finding that the probative value of the testimony was outweighed by its tendency to confuse and mislead the jury. *See* No. 2:15-cv-02086, 2017 WL 3118017, at *8 & n.13 (D.S.C. July 21, 2017) (adding in dicta that the testimony would "likely fail" under Rule 703's helpfulness standard and that the court had serious concerns about the analytical gap between the opinion and the data relied on). But Honeywell nowhere develops a similar argument. Rather, Honeywell repeatedly challenges the reliability of Dr. Abraham's opinion.

[13]   Honeywell attempts to reframe these other decisions to support its position that Dr. Abraham's testimony is unreliable, asserting that he conflates "asbestos" generally with "brake dust" specifically.

13

When it comes to the admissibility of expert testimony, the district court's role is that of "gatekeeper" not "armed guard." *Ruiz-Troche*, 161 F.3d at 86. Dr. Abraham concluded that Mr. Coffin's mesothelioma was caused by his cumulative exposure to asbestos.[14] From the record before me, I find that this conclusion rests on " 'good grounds,' based on what is known," *Daubert*, 509 U.S. at 590, and is thus admissible. *See Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 20 (1st Cir. 2011) (concluding that district court improperly excluded expert testimony as unreliable because the exclusion "was based on its evaluation of the weight of the evidence, which is an issue that is the province of the jury").

### B.     MCRR's Motion[15]

MCRR raises many of the same arguments as Honeywell, including that Dr. Abraham's testimony is legally insufficient and that courts have rejected the "any" or

---

Honeywell's Mot. Exclude Abraham 16. But Honeywell can probe any such distinction on cross-examination and can make its case to the jury that the Plaintiff has failed to prove that Honeywell's products themselves caused his mesothelioma.

[14]     Honeywell also argues that Dr. Abraham "did not weigh the possibility of other causes," such as Mr. Coffin's "environmental exposure to amosite asbestos from thermal insulation from Bath Iron Works." Honeywell's Mot. Exclude Abraham 17. This argument appears to misunderstand Dr. Abraham's testimony, which is that all of Mr. Coffin's cumulative asbestos exposure caused his mesothelioma. Dr. Abraham does not apportion liability amongst possible causes and thus any other exposures not referenced in Mr. Coffin's history would just be additional. *See* Abraham Dep. 74:02–09. As with Honeywell's other arguments, Honeywell can question Dr. Abraham about these other potential causes at trial.

[15]     Even though the Plaintiff's claim against MCRR arises under FELA, I apply the same *Daubert* standard in determining whether an expert's testimony is reliable. *See Bardo v. Norfolk S. Ry. Co.*, No. 4:17-cv-942, 2020 WL 2343012, at *3–4 (M.D. Pa. May 11, 2020); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 47 (2d Cir. 2004) ("[T]he standards for determining the reliability and credibility of expert testimony are not altered merely because the burden of proof is relaxed."). But FELA's relaxed causation standard could be pertinent in determining whether an expert's opinion is relevant or would be helpful to the jury. *See Wills*, 379 F.3d at 47 n.9; *Lemberger v. Union Pac. R.R. Co.*, --- F. Supp. 3d ---, 2020 WL 2793565, at *6 n.6 (D. Neb. May 29, 2020). Nevertheless, although the Defendants occasionally cite cases in which courts excluded expert testimony on relevancy grounds, neither Defendant develops any argument that Dr. Abraham's testimony is not relevant.

"cumulative" exposure theories. For the reasons detailed above, I conclude that these arguments also fail.[16]

MCRR's additional attacks on Dr. Abraham's testimony fare no better. MCRR contends that Dr. Abraham relied on facts that conflicted with Mr. Coffin's own testimony, making Dr. Abraham's opinion inadmissible. *See* MCRR's Mot. to Exclude Pl.'s Expert Witness Dr. Abraham 7 ("**MCRR's Mot. Exclude Abraham**") (ECF No. 86) (noting that Dr. Abraham stated that Mr. Coffin worked as an electrician in 1967 and later in a bridge control room where he was exposed to asbestos dust, but that Mr. Coffin described his role in 1967 as a "drawbridge operator" and that he never saw any visible asbestos dust released from the walls of the control room). These factual issues might be relevant for trial because they relate to whether and how Mr. Coffin was exposed to asbestos. But such questions can be probed through cross-examination and are to be resolved by the jury. *See Milward*, 639 F.3d at 22 (explaining that the soundness of the opinion's factual underpinnings and the

---

[16] MCRR cites to several other decisions, in which it says courts ruled that "testimony of 'any' exposure or 'cumulative' exposure is insufficient to support a finding of proximate cause." MCRR's Mot. Exclude Abraham 4–6. Some of these decisions were rendered at the summary judgment or trial stage and were tethered to the sufficiency of the testimony. *See McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1177–78 (9th Cir. 2016) (summary judgment); *Moeller v. Garlock Sealing Techs., LLC*, 660 F.3d 950, 955 (6th Cir. 2011) (judgment as a matter of law); *Bartel v. John Crane, Inc.*, 316 F. Supp. 2d 603 (N.D. Ohio 2004) (bench trial). Three decisions ruled on motions to exclude but concerned the admissibility of an "each and every exposure" theory that differs from Dr. Abraham's testimony. *See Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 846–47 (E.D.N.C. 2015) (expert report stated that "[e]ach and every exposure to asbestos that an individual with mesothelioma experienced in excess of a background level contributes to the development of the disease" (internal quotation marks omitted)); *Comardelle v. Pa. Gen. Ins. Co*, 76 F. Supp. 3d 628, 632–35 (E.D. La. 2015) (expert testified that all of the exposures of a person who developed mesothelioma "would have contributed to *cause* his mesothelioma" (internal quotation marks omitted)); *Rockman*, 266 F. Supp. 3d at 849–50 (experts testified that amount of exposure was not relevant because all amounts above background exposure cause disease).

15

correctness of the expert's conclusions are factual matters reserved for the jury); *Silkman*, 2019 WL 6467811, at *4–5; *Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 28 (D. Me. 2010) ("When the adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion." (internal quotation marks omitted)); *cf. Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 645 (7th Cir. 2010) ("[W]hen a medical expert has relied upon a patient's self-reported history and that history is found to be inaccurate, district courts usually should allow those inaccuracies in that history to be explored through cross-examination." (internal quotation marks omitted)).

MCRR also contends that Dr. Abraham lacked information about the types of asbestos fibers Mr. Coffin was exposed to and had no real information on duration or intensity, yet he still "reache[d] the conclusions that there must have been some exposure, and that that exposure caused [Mr. Coffin's] mesothelioma." MCRR's Mot. Exclude Abraham 9. But Dr. Abraham did not "conclude" that Mr. Coffin had asbestos exposure; he was told he did and was relying on that assumption in developing his causation conclusion. He acknowledged that, if told that "a given part of [Mr. Coffin's] cumulative exposure didn't happen, then his cumulative exposure would have been somewhat less and that particular exposure that didn't happen would not be a contributing factor." Abraham Dep. 70:12–17. Again, MCRR can challenge the factual underpinnings of Dr. Abraham's conclusions at trial.

At this stage, I conclude that Dr. Abraham's testimony is admissible and that, if necessary, the testimony can be limited at trial.

## II. Expert Testimony of Dr. Ozonoff

Honeywell and MCRR also move to exclude the testimony of Dr. David Ozonoff. In his report, Dr. Ozonoff concludes that the "knowledge at the time Mr. Coffin was exposed indicated that asbestos could cause a serious, often fatal, scarring of the lungs and also various forms of cancer, including the cancer from which Mr. Coffin suffered, mesothelioma." Expert Report of David Ozonoff, M.D. 11 ("**Ozonoff Report**") (ECF No. 90-2). Because MCRR and Honeywell raise similar arguments in their briefs, I address their motions together.

First, MCRR argues that Dr. Ozonoff's opinion is not relevant or probative of foreseeability. MCRR's Reply Mem. Supp. Mot. Exclude Pl.'s Expert Witness, Dr. Ozonoff 1 ("**MCRR's Reply Exclude Ozonoff**") (ECF No. 96). In support of this argument, MCRR contends that Dr. Ozonoff's report "does not provide any basis" for his conclusion that Mr. Coffin worked in jobs where asbestos exposure was common. MCRR's Mot. Exclude Pl.'s Expert Witness, Dr. Ozonoff 5 ("**MCRR's Mot. Exclude Ozonoff**") (ECF No. 87). Moreover, MCRR argues that there is "a wide analytical gap between the body of research and historical studies upon which Dr. Ozonoff references and relies on for his report and the factual circumstances of this case."[17]

---

[17] MCRR also contends that the Plaintiff "does not fall under the category of employees or workers referenced in the research upon which Dr. Ozonoff bases his opinion," emphasizing that the Plaintiff worked in an MCRR control room. MCRR's Mot. Exclude Pl.'s Expert Witness, Dr. Ozonoff 6 ("**MCRR's Mot. Exclude Ozonoff**") (ECF No. 87). Similarly, MCRR asserts that Dr. Ozonoff's opinions do not address the foreseeability of the Plaintiff's injuries to MCRR itself. MCRR's Reply Mem. Supp. Mot. Exclude Pl.'s Expert Witness, Dr. Ozonoff 1–2 (ECF No. 96). These appear to be arguments aimed at minimizing the weight that should be afforded to Dr. Ozonoff's testimony, not a basis for its entire exclusion. MCRR has not convincingly explained how Dr. Ozonoff's testimony is unreliable or will be confusing to a jury.

MCRR's Mot. Exclude Ozonoff 8. Honeywell similarly asserts that Dr. Ozonoff "does not provide any opinion related to brake dust exposures," making his opinions irrelevant and unhelpful to the trier of fact. Honeywell's Mot. Exclude Dr. Ozonoff's "State of the Art" Op. and Req. for Evidentiary Hr'g 2 ("**Honeywell's Mot. Exclude Ozonoff**") (ECF No. 88).

But much of the Defendants' argument seems to be that Dr. Ozonoff's testimony alone cannot establish the foreseeability prong of liability. *See* MCRR's Reply Exclude Ozonoff 3 ("In addition to the fact that Dr. Ozonoff attempts to infer knowledge upon MCRR for something that still has not been reported in the literature, Plaintiff's own testimony undercuts any argument or inference from this expert that MCRR knew, or should have known, of the potential for asbestos exposure from the walls of the control room. Plaintiff has not, and will not, be able to present any evidence that MCRR knew of the contents of the wall board."); Honeywell's Mot. Exclude Ozonoff 3 ("With respect to what Honeywell or Bendix reasonably should have known, Dr. Ozonoff fails to take into account the significant difference between an automotive brake product manufactured using chrysotile as an ingredient and commercial amphibole asbestos fibers."). Although such points might be helpful in challenging Dr. Ozonoff's testimony at trial, they do not warrant exclusion of his testimony.

Dr. Ozonoff describes his report as his "opinion regarding what was known or could have been known at the time Mr. Coffin worked in jobs where asbestos exposure was common and what was considered prudent by public health practitioners and

others about what to do about protecting workers in this period."[18] Ozonoff Report 3. Although Dr. Ozonoff does not detail what was known by a particular Defendant about specific types of asbestos exposure,[19] Dr. Ozonoff's testimony details the history of the scientific understanding of the risks associated with asbestos exposure. This testimony is helpful in "providing context and grounding scientific information integral to the determination of this case." *Jack*, 2018 WL 3819027, at *18 (internal quotation marks omitted); *see also Krik v. Crane Co.*, 71 F. Supp. 3d 784, 787 (N.D. Ill. 2014) (permitting expert to testify about the state of the art for asbestos from a historical perspective and explaining that the testimony would be helpful to the jury, particularly in light of "the sheer volume of data available on this topic"). Whether or not any risk was foreseeable to MCRR or Honeywell when the alleged exposure occurred is a question for the jury to answer, and any holes or weaknesses in the utility of Dr. Ozonoff's testimony in proving liability can be exposed at trial.[20]

---

[18] MCRR also argues that Dr. Ozonoff does "not reference any studies of asbestos specific to disease arising from exposure to wallboard that is in-place and undisturbed post-construction" and does not "cite to any studies that relate to a risk of mesothelioma caused by exposure of people working within a structure that contains asbestos wall products." MCRR's Mot. Exclude Ozonoff 6–7. But the limitations of Dr. Ozonoff's opinion can be exposed at trial, based on the facts that are established.

[19] For example, MCRR argues that Dr. Ozonoff's opinion focuses on "manufacturers and purveyors of asbestos and asbestos products" and that he "does not state that the literature was accessible and available to employers with employees who were surrounded by asbestos-containing wall products." MCRR's Mot. Exclude Ozonoff 7 (emphasis omitted). This, of course, might be an important point for MCRR to make at trial, but it does not render Dr. Ozonoff's testimony unhelpful or irrelevant.

[20] Honeywell also argues that the Plaintiff "did not properly disclose any opinion by Dr. Ozonoff related to Mr. Coffin's brake dust related claims." Honeywell's Mot. Exclude Dr. Ozonoff's "State of the Art" Op. and Req. for Evidentiary Hr'g 1–2 (ECF No. 88). This argument fails for the same reasons as Honeywell's similar argument with respect to Dr. Abraham. The Plaintiff's disclosure included Dr. Ozonoff's report, in which he detailed the evolution of scientific understanding about asbestos exposure, including exposure from asbestos containing products. Expert Report of David Ozonoff, M.D. 10–11 ("**Ozonoff Report**") (concluding that "the medical literature indicated that exposure to asbestos dust from product use differed in no significant respect from any other kind of exposure"). It remains

## CONCLUSION

For the reasons stated above, the Court **DENIES** MCRR's Motions to Exclude the expert testimony of Dr. Abraham (ECF No. 86) and Dr. Ozonoff (ECF No. 87) and Honeywell's Motions to Exclude the expert testimony of Dr. Abraham (ECF No. 89) and Dr. Ozonoff (ECF No. 88).

SO ORDERED.

/s/ Nancy Torresen<br>United States District Judge

Dated this 16th day of September, 2020.

---

the Plaintiff's burden to prove that Honeywell knew or should have known about any allegedly harmful content in its products.